## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **DCFS USA, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 10-042 (RMC)** |
| ) | |
| **DISTRICT OF COLUMBIA,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This is a case about a luxury car auctioned by the District of Columbia Department of Public Works ("DPW") without notice to the holder of the note. Plaintiff DCFS USA, LLC ("DCFS") sues the District of Columbia under the Fifth Amendment of the U.S. Constitution and 42 U.S.C. § 1983, complaining that the D.C. failed to provide constitutionally-required prior notice. Finding merit to the constitutional claim, the Court will enter summary judgment for DCFS on Count I of the Amended Complaint.

### I. FACTS

In 2006, Stephen Yelverton purchased a 2006 Mercedes Benz SLK350 (the "Vehicle") from Mercedes Benz of Alexandria in Alexandria, Virginia. Mr. Yelverton signed a purchase agreement, under which he gave a down payment of $8,000.00 towards the Vehicle's purchase price of $55,177.66, and agreed to sixty monthly payments of $706.17 beginning in September 2006, with a final payment of $23,106.30 due in September 2011. The total purchase price, with interest, was $65,476.50. The Vehicle operated with a Virginia license plate.

Mercedes Benz of Alexandria assigned the purchase agreement to DaimlerChrysler Financial Services Americas LLC ("DCFSA"), giving DCFSA a first security interest in the Vehicle. DCFSA's security interest was properly perfected and was reflected on the Vehicle's Certificate of Title. Plaintiff DCFS is the successor in interest to DCFSA and thus became the secured creditor to the Vehicle. Eventually, Mr. Yelverton defaulted on the purchase agreement by failing to make timely payments. DCFS notified Mr. Yelverton of his default and demanded payment in full, in the amount of $42,606.70, on September 16, 2008. Mr. Yelverton never cured the default.

On December 22, 2008, the DPW towed and impounded the Vehicle. On January 12, 2009, the DPW published an impoundment notice in The Washington Times, notifying the public of the DPW's intent to sell the Vehicle at auction. On February 4, 2009, the DPW sent an impoundment notice, by first class mail, to Mr. Yelverton at his last known address. Mr. Yelverton did not respond to the notice. The Vehicle was advertised for online auction between March 12 and March 19, 2009, and was sold on March 17, 2009, for $18,900. As of that date, it remained unclaimed. The DPW sold the Vehicle free and clear of DCFS's security interest.

The District of Columbia provided neither DCFSA nor DCFS with prior mailed notice that the Vehicle was impounded and might be auctioned. In July 2009, DCFS learned that the Vehicle had been auctioned by DPW after conducting an internet search using the Vehicle's vehicle identification number. An employee of DPW then informed DCFS that it had not received notice because the Vehicle was not registered in the District. Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot. for Summ. J. [Dkts. ## 31, 32] ("Pl.'s Opp'n"), Ex. I (Aff. of Ernie Bucks) ¶ 8. At the time the Vehicle was sold, Mr. Yelverton owed DCFS more than $42,000. DCFS demanded that the District reimburse it for the full amount, but the District rejected the demand. This lawsuit

followed.

DCFS alleges that the District denied it prior notice and a meaningful opportunity to be heard on the impoundment and sale of the Vehicle in violation of its right to procedural due process under the Fifth Amendment of the United States Constitution (Count I) and also alleges a violation of 42 U.S.C. § 1983 (Count II). *See* Am. Compl. [Dkt. # 27] Counts I–II. The Court ordered discovery solely on Count I, the Fifth Amendment claim, as the § 1983 claim would rise or fall with the first count. DCFS filed an Amended Complaint on November 19, 2010, omitting claims against Mr. Yelverton after he was voluntarily dismissed. *See* Am. Compl.; Notice of Voluntary Dismissal [Dkt. # 8]. The District filed an amended motion to dismiss, or in the alternative, for summary judgment and DCFS cross-moved for summary judgment. The cross motions are ripe.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. 8(a)(1). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, the facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. In deciding a motion under Rule 12(b)(6), a court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id*.

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter

of law. *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. Dist. of Columbia,* 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts and draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

## III. ANALYSIS

### A. Admissibility of Certain Evidence

The District of Columbia seeks to have the Court consider an affidavit by Cynthia Jones, a Certified Public Manager for DPW's Abandoned Vehicle Division which states:

1.   On December 23, 2008, the District inquired of the Maryland, Virginia, Pennsylvania and Delaware motor vehicle departments for information related to the ownership of the Vehicle, using its Virginia license plate number. These inquiries were made electronically, using the Washington Area Law Enforcement System ("WALES"), a computerized information system. The WALES system is the primary tool available to DPW to obtain ownership information for vehicles in its possession. All four departments reported that the license plate number was not registered in their

jurisdiction.

2.      On February 4, 2009, the District again inquired of the Virginia Department of Motor

Vehicles ("DMV") for information about the Vehicle, this time providing its vehicle

identification number.  The Virginia DMV, using the National Law Enforcement

Telecommunications System, responded with the name and address of Mr. Yelverton.

No additional information was provided.

*See* Def.'s Reply & Opp'n to Pl.'s Cross-Mot. for Summ. J. [Dkts. ## 34, 35] ("Def.'s Reply), Ex.

A (Affidavit of Cynthia Jones) ("Jones Aff.") ¶¶ 4, 7.  The District introduced the Jones Affidavit,

and the facts stated therein, for the first time in its combined reply and opposition to DCFS's cross-

motion for summary judgment.

      DCFS strongly objects to the District's attempt to undermine its previous admission

in discovery that D.C. did not search the database of Virginia's DMV to determine whether there

were any lienholders reflected on the Vehicle's title.  *See* Pl.'s Reply [Dkt. # 36] at 5–6.  The District

admitted – and the Court judicially established as fact – that it "did not search the records of

Virginia's Department of Motor Vehicles to determine whether there were any lien holders reflected

on the title of the Vehicle."  Pl.'s Opp'n, Ex. G (District's Responses to Admission Requests) ¶ 5.[1]

---

[1]  Although the District expressly admitted this fact (in its untimely response to DCFS's
Requests for Admissions), the Court deemed admitted all of DCFS's Requests for Admissions
because the District failed to respond timely.  The District had moved for an extension of time to
respond to the Requests after the deadline for doing so had passed, and for an extension of time to
conduct discovery.  *See* Def.'s Mot. for Order [Dkt. # 16].  While the Court granted more time to
conduct discovery, the Court deemed the Requests admitted per Federal Rule of Civil Procedure
36(a)(3).  *See* Order [Dkt. # 18].  The Court explained:

> On June 9, 2010, Plaintiff served its first set of written discovery
> requests upon the District, which included six Requests for
> Admissions.  The District failed to timely respond to the written

Nonetheless, the District incredibly argues now that its admission before is not inconsistent with the Jones Affidavit that "[o]n December 23, 2008, inquiries were sent by the DPW to . . . the Virginia Department of Motor Vehicles . . . for information related to the ownership" and lienholder information of the Vehicle.  Jones Aff. ¶ 4, *see also id*. ¶ 7 (further explaining that "an additional inquiry identifying the Vehicle by its Vehicle Identification Number was sent by the DPW to the Virginia Department of Motor Vehicles through WALES for information about the Vehicle").  The District contends that it employed WALES to conduct the inquiry, but did not search Virginia's DMV database itself.  *See* Def.'s Surreply [Dkt. # 40] at 3 ("WALES does not allow the District to search the Virginia Department of Motor Vehicles' records; rather, WALES simply allows the

---

discovery requests.  On July 16, 2010, Plaintiff filed a notice of deemed admissions pursuant to Federal Rule of Civil Procedure 36(a)(3).  *See* Dkt. # 1[5].  Later the same day, the District moved to amend the Scheduling Order.  *See* Dkt. # 16.  The District [sought] leave to respond to the Plaintiff's written discovery requests by August 6, 2010, and request[ed] that discovery [already once extended, at its request] be extended until September 13, 2010.  Plaintiff filed a timely opposition, but the District did not file a reply.

While the Court is sympathetic to counsel's workload, it appears that the District "woke up" to this case only when the notice of deemed admissions was filed and then promptly went back to ignoring it, filing no reply to the Plaintiff's cogent opposition. This is not the proper basis for excusable neglect.  The admissions are deemed admitted.  The Court will not "unring" that bell.  Other discovery is extended until September 13, 2010.

*See* Order [Dkt. # 18].  The District moved for reconsideration, *see* Def.'s Mot. for Reconsideration [Dkt. # 19], and argued in its reply that it had mistakenly, but in good faith, miscalculated the deadline for filing a reply in support of its original motion for an enlargement of time.  *See* Reply in Support of Def.'s Mot. for Reconsideration [Dkt. # 21] at 1.  The Court denied the motion for reconsideration.  *See* Minute Entry Order 9/9/2010.  Of course, the District also expressly admitted it did not search Virginia's DMV records, so its current predicament does not rest solely on the Court's previous sanction.

District to request information concerning vehicles in its possession about which other states may have information.").  In other words, the District used WALES as an intermediary to inquire of the Virginia DMV database as to information concerning the Vehicle, its previous admission and the Court's sanction to the contrary.  The Court will not permit such gamesmanship.  The District cannot undermine this binding and "conclusively established" fact through introduction of the Jones Affidavit.  *See* FED. R. CIV. P. 36(b); *Rainbolt v. Johnson*, 669 F.2d 767, 768–69 (D.C. Cir. 1981).

DCFS further moves to preclude the Jones Affidavit as a sanction under Rule 37 because of the District's failure to provide DCFS with information about the District's search of the databases of the four states during the course of discovery.  *See* Pl.'s Reply at 7–9.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  A primary consideration for a court is that any Rule 37 sanction must be just.  *See Bonds v. Dist. of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996).  "The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction."  *Id*. (quoting *Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1077 (D.C. Cir. 1986)).

In response to DCFS's interrogatory requesting that the District "[d]escribe in detail the method by which the District determined when, where, how and to whom to provide notice of the impoundment of the Vehicle," and to identify all related documents, the District merely provided a list of documents and gave no recitation of the details contained in the Jones Affidavit.  *See* Pl.'s Reply, Ex. B (District's Interrog. Responses) ¶ 5; *see also id*., Ex. C (District's Supplemental Interrog. Responses) ¶ 5.  A party must respond to an interrogatory, not by simply citing to a

document, but by answering each question separately and fully in writing. *See* FED. R. CIV. P. 33(b)(1); *see also Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 34 (D.D.C. 2007). Similarly, in response to an interrogatory that asked for the name, address and phone number of "each individual likely to have discoverable information" and to "describe in detail his or her specific material knowledge or information," the District identified Ms. Jones, among others, but omitted her title, her phone number, or any indication – much less a detailed one – concerning the nature of her specific material knowledge. *See* Pl.'s Reply, Ex. B (District's Interrog. Responses) ¶ 3.

DCFS notified the District of its deficient and unresponsive answers to no avail. *See* Pl.'s Reply, Ex. A (Discovery Deficiency Letter Dated 9/2/10). For instance, DCFS specifically requested that the District cure its failure to provide any information about the material knowledge of the individuals it identified as having potentially discoverable information, which included Ms. Jones. *See id*. at 1. The District's supplemental interrogatory responses, dated sometime in September 2010, simply stated that "the District not know [sic] what knowledge each individual possesses." *Id*., Ex. C (District's Supplemental Interrog. Responses) ¶ 3. Counsel responding to interrogatories is not at liberty to say she does not know the answers to very legitimate questions, but must provide "true, explicit, responsive, complete, and candid" responses. *See Equal Rights Ctr.*, 246 F.R.D. at 32; *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 524 (D.D.C. 2006).[2] Finding out such answers is exactly the purpose of pre-trial

_____

[2] This was not a situation in which a party properly answers an interrogatory by stating it is presently unable to provide the information requested while indicating that additional information will be forthcoming in compliance with its duty to supplement. *See Equal Rights Ctr.*, 246 F.R.D. at 33.

discovery. Discovery serves to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble*, 356 U.S. 677, 682 (1958). Notably, there is no record of further supplementation before the District attached the Jones Affidavit to its combined reply and opposition. As discovery is an on-going obligation, *see* FED. R. CIV. P. 26(e), even if ignorance were acceptable in an initial response – which is not the case here, where two extensions of time to complete discovery had been granted – the District had an obligation to provide a complete answer as soon as its counsel knew it. *See Norden v. Samper*, 544 F. Supp. 2d 43, 49 (D.D.C. 2008) (noting a party's duty to supplement discovery). This did not happen.

DCFS also tried to elicit further information on the WALES program, seeking clarification on the extent of searches conducted by the system and how Mr. Yelverton's name was ultimately uncovered by the system. *See* Pl.'s Reply, Ex. A (Discovery Deficiency Letter Dated 9/2/10) at 3. Given the discovery responses and admissions it had received, it appears that DCFS was under the impression that WALES only searched the District's own DMV records and explicitly sought clarification on this point. *See id.* Despite being on notice of this potential confusion, and despite explicit requests for information, the District wholly failed to respond. *See, e.g.,* Ex. C (District's Supplemental Interrog. Responses) ¶ 6. "[I]nterrogatories are not only an information gathering tool, but also an opportunity to require one's opponent to state its position on an issue in controversy in writing and under oath." *Covad Commc'ns. Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009). At a minimum, the District's incomplete responses, despite explicit requests for further information and despite its duty to supplement, had the effect of hiding the ball that the WALES system searched records of jurisdictions beyond the District of Columbia.

The District's insistence that it identified Ms. Jones as a person with knowledge and DCFS chose not to depose her is no answer at all. The District was asked to give details of the material information known by Ms. Jones, among others, so that DCFS could sensibly plan whom to depose, *i.e.*, how to spend its litigation dollars. The District robbed DCFS of that opportunity due to its own failures and cannot now be allowed to blame DCFS for inaction. Moreover, the District admitted early on that the District had not searched the records of the Virginia DMV and failed to provide information on the searches purportedly conducted by Ms. Jones despite DCFS's requests for production on this very topic. *See* Pl.'s Reply, Ex. D (District's Production Requests Responses) ¶ 2. Further, the District's procedural argument that DCFS's Rule 37 objection is improper because it is not presented by separate motion is unavailing. As the Court accepted the District's surreply, it has had its opportunity to be heard on this point.

The District's pattern in this case of failing grossly in its obligations to civil discovery is very troubling. The Court again reiterates its sympathy for counsel's workload, but there remain necessary consequences when information properly sought but not produced is suddenly unveiled in opposition to a motion for summary judgment (and in reply to a party's own motion). This record does not present a single inadvertent error. Not only did the District ignore its discovery obligations from June–July 2010, for which the Court entered an order on August 12, 2010, but the District also filed supplemental interrogatory responses in September 2010 that failed to correct the errors of its initial responses and only provided additional imprecise and insufficient information, and then further failed to supplement these responses once detailed information became known.

The sudden infusion of information from Ms. Jones in opposition to summary judgment – a DPW manager whose contemporaneous knowledge is imputed to the District – violates

the letter and spirit of discovery and cannot be accepted. DCFS provides no substantial justification

for this late offering – but instead argues that there is nothing untoward in its actions. *See generally*

Def.'s Surreply. Given the costs of discovery, the fact that discovery has long since been closed, the

fact that DCFS has justifiably relied on a theory of the case now altered by the District, and the

number of discovery errors committed by the District, the Court cannot find the introduction of the

Jones Affidavit at this juncture to be harmless. Because of the Court's previous ruling, the District's

previous admission, and Rule 37, the Jones Affidavit and all argument relying upon it will be

stricken from the record.

### B. Procedural Due Process Claim

The Due Process Clause of the Fifth Amendment protects individuals against

deprivations of "life, liberty, or property, without due process of law." U.S. CONST. amend V.

"Procedural due process imposes constraints on governmental decisions which deprive individuals

of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or

Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see Atherton v. D.C.*

*Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) ("A procedural due process violation occurs

when an official deprives an individual of a liberty or property interest without providing appropriate

procedural protections."). The Due Process Clause of the Fifth Amendment, not the Fourteenth

Amendment, applies to the District of Columbia because the District is a political entity created by

the federal government. *See Propert v. Dist. of Columbia*, 948 F.2d 1327 n.5 (D.C. Cir. 1991)

(citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)). In order to assess whether the District violated

the Fifth Amendment's Due Process Clause, a court must engage in a "familiar two-part inquiry" –

it must "determine whether the plaintiffs were deprived of a protected interest, and, if so, whether

they received the process they were due." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trustees*, 56 F.3d 1469, 1471 (D.C. Cir. 1995).

## *I. Deprivation of a Property Interest*

DCFS seeks to enforce the procedural due process rights owed to its predecessor in interest, DCFSA, an entity which no longer exists. *See* Pl.'s Reply at 4. The Vehicle's Certificate of Title explicitly identified DCFSA as the secured creditor, and its address was clearly listed on the Certificate. As successor in interest to the Vehicle, DCFS stands in the shoes of and may enforce any rights of DCFSA.[3] Accordingly, DCFS had a protected property interest in the Vehicle, which

---

[3] The District contends that, "[w]hile Plaintiff argues that the District failed to search the records in the State of Virginia, it admits that it was not listed as the lienholder; instead, its predecessor was listed as the lienholder. On this record, Plaintiff simply cannot show that it was entitled to due process since it was not listed as the lienholder at the time the District impounded or otherwise sold the subject vehicle." Def.'s Mem. in Support of Am. Mot. to Dismiss ("Def.'s Mem.") [Dkt. # 29] at 11 (internal citation omitted). The suggestion that DCFS, as successor in interest, is not entitled to enforce the rights of its predecessor is without any citation to authority and is contrary to law.

By definition, a successor in interest retains all of the rights of the original owner and is entitled to enforce those rights. *See* BLACK'S LAW DICTIONARY 1832 (9th ed. 2009) (defining "successor in interest" as "[o]ne who follows another in ownership or control of property" and noting that "[a] successor in interest retains the same rights as the original owner, with no change in substance."). Successors in interest may bring suit pursuant to the rights owed to their predecessors or, conversely, defend a suit by employing the rights and/or defenses available to their predecessors. *See, e.g.*, *Solomon v. Falcone*, Civ. No. 09-2210, 2011 WL 2342759, at *3 (D.D.C. June 15, 2011) (noting that plaintiff's claims, including an alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, were properly asserted against defendants as successors in interest and assignees of plaintiff's mortgage loan); *Gilberg v. MetLife, Inc.*, 734 F. Supp. 2d 5, 6 (D.D.C. 2010) (noting that defendant filed a third-party complaint against a company as successor in interest to another company); *Wash. Metro. Area Transit Auth. v. Georgetown Univ.*, 180 F. Supp. 2d 137, 139–40 (D.D.C. 2001) (stating that because predecessors had reserved for themselves certain rights in a deed, those "rights now belong to Georgetown [University] as successor-in-interest"), *rev'd on other grounds*, 347 F.3d 941 (D.C. Cir. 2003); *Democratic Nat'l Comm. v. McCord*, 416 F. Supp. 505, 506 (D.D.C. 1976) (explaining that because certain defendants were trustees of and successors in interest to certain political committees, that they "stand in the same position as, and can assert defenses which would have been available to, the Committees"); *cf.* FED. R. CIV. P. 25(c) ("If an interest is

was eradicated when the District sold the Vehicle free and clear of any liens.

## II.  Process Due DCFS

Looking first to the District's statutory obligations, it must provide notice by first class mail to owners and lienholders within five days of impounding a vehicle.  D.C. CODE § 50-2421.07(b).[4]  In addition to providing certain information related to the impoundment – for example, the reason why a vehicle was impounded – the notice must warn the vehicle owner and lienholders that the vehicle will be sold or otherwise disposed of if it is not reclaimed within the set reclamation period.  *Id*. § 50-2421.07(c)(2), (5).  These notification requirements apply with equal force where, as here, the District impounds an out-of-state vehicle.  *See id*. § 50-2421.07(b).  It is undisputed that the notification requirements outlined in § 50-2421.07 apply in this case.[5]  The District, therefore,

---

transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.").

[4]  The relevant portion of the D.C. Code states:  "The Department [of Public Works] shall send an impoundment notice, by first class mail, to the last known address of the owners of record of the vehicle, and any lienholders of record, as that information is indicated in the records of the Department of Motor Vehicles or in the records of the appropriate agency of the jurisdiction where the vehicle is registered."  D.C. CODE § 50-2421.07(b).  The impoundment notice must be mailed no later than five days after the vehicle's receipt at an impoundment or storage facility.  *Id*. § 50-2421.07(c).  DPW is exempted from this obligation only if the vehicle is disposed of pursuant to § 50-2421.06, *i.e.*, if the vehicle does not display a valid vehicle identification number and recognizable registration and it is a dangerous or abandoned vehicle removed from the public space or private property pursuant to any D.C. law or regulation.  *See id*. § 50-2421.06.  The District does not claim that § 50-2421.06 applies here.

[5]  The parties differ over what provision of D.C. law provided the authority to impound the Vehicle in the first instance.  Whether impounded under D.C. Mun. Regs. tit. 18 § 2421.1, as alleged by the District, or improperly impounded under D.C. Code § 50-2201.03(k), as argued by DCFS, the notification requirements of D.C. Code § 50-2421.07 would apply.  *See* D.C. MUN. REGS. tit, 18 § 2421.2; D.C. CODE § 50-2201.03(k)(2).  More to the point, whether the Vehicle was improperly impounded in the first instance is not dispositive of whether DCFS was denied its constitutional right to prior notice of sale.

was statutorily required to send notice to DCFSA regardless of its status as the lienholder of a vehicle not registered in the District.[6]

In the alternative to mailed notice, the District may provide notice of an impoundment by publication in a newspaper of general circulation if (a) the address of the owner or lienholders cannot be determined or if (b) the mailed notice is returned as undeliverable. *See id*. § 50-2421.07(d). As the District failed to send notice of the impoundment or auction to DCFSA, no mail could have been returned as undelivered.[7] Therefore, per District law, the DPW could only have properly provided notice by publication if it could not have determined the address of the owner or lienholders. The identity of DCFSA as the titled lienholder was clearly reflected on the Certificate of Title and was determinable. The District's published notice in the Washington Times did not comply with the requirements of § 50-2421.07(d).

That the District violated the notification requirements outlined in its own laws or regulations, however, does not itself mean that it deprived DCFS of procedural due process due under the Fifth Amendment. *See Tate v. Dist. of Columbia*, 627 F.3d 904, 908 (D.C. Cir. 2010) (noting that the District's failure to provide the requisite 45-days notice prior to selling the plaintiff's vehicle at auction did not necessarily mean the plaintiff was deprived of her Fifth Amendment due process rights); *Barwood, Inc. v. Dist. of Columbia*, 202 F.3d 290, 294 (D.C. Cir. 2000); *see also*

---

[6] DCFS argues that it was entitled to personal or first class mailed notice of the Vehicle's impoundment at DCFSA's Roanoke, Texas address – the address listed on the Certificate of Title. DCFS does not argue that the District was under an obligation to ascertain DCFS's identity as successor in interest or that DCFS was itself entitled to mailed notice at its Farmington Hills, Michigan address. *See, e.g.,* Pl.'s Reply at 4.

[7] The District admitted that it did not provide notice by first class mail to DCFS prior to the auction of the Vehicle. Pl.'s Opp'n, Ex. G (District's Responses to Admission Requests) ¶ 2.

*Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644 (D.C. Cir. 1987). Conversely, even if a state provides notice in compliance with a state law, the notice may nevertheless fall short of what is required under the Due Process Clause. *See, e.g.*, *Jones v. Flowers*, 547 U.S. 220 (2006). Accordingly, whether or not the District violated DCFS's due process rights must be analyzed separately from the District's failure to comply with D.C. law.

"[T]he Supreme Court has established a 'general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property.'" *UDC Chairs Chapter*, 56 F.3d at 1472 (quoting *United States v. James Daniel Good Real Prop.*, 114 S. Ct. 492, 499 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "As *Mullane* made clear, the Due Process Clause does not demand actual, successful notice, but it does require a reasonable effort to give notice." *Small v. United States*, 136 F.3d 1334, 1336 (D.C. Cir. 1998).[8] The government must also provide "the opportunity to be heard 'at a

---

[8] To help courts determine what process is due, the Supreme Court first articulated a balancing test in *Mathews*. 424 U.S. at 424. While courts frequently and regularly employ the *Mathews* analysis to resolve due process claims, the Supreme Court more recently reiterated that, "we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). The *Dusenbery* Court declined to apply *Mathews*, choosing instead to follow the analysis of "notice reasonably calculated" to apprise interested parties set forth in *Mullane*. *Id*. The Supreme Court further noted that it regularly turned to *Mullane*, rather than *Mathews*, when confronted with questions regarding the adequacy of methods used to give notice. *Id.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983); *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988); *Schroeder v. City of N.Y.*, 371 U.S. 208 (1962). Because the Court's reasoning in the *Mullane, Mennonite, Schroeder,* and *Tulsa* line of cases applies most directly to the disposition of the present case, this Court proceeds under the *Mullane* framework.

meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)).  Beyond these threshold requirements, the extent of procedural protections the Constitution mandates varies with the particular situation and the interest at stake.  *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Propert*, 948 F.2d at 1332.  Procedural requirements must not "place impossible or impractical obstacles" on the government.  *Mullane*, 339 U.S. at 314.  Nonetheless, "the government is never relieved of its duty to provide *some* notice and *some* opportunity to be heard prior to final deprivation of a property interest."  *Propert*, 948 F.2d at 1332.

　　　　The Supreme Court has addressed the adequacy of notice by publication or posting – in a local newspaper or elsewhere – on numerous occasions.  "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, . . . if its name and address are reasonably ascertainable."  *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also id*. at 798 (noting that unless an interest holder "is not reasonably identifiable, constructive notice [by publication] alone does not satisfy the mandate of *Mullane*"); *Jones*, 547 U.S. at 222.  "*Mullane* recognized that notice by publication is adequate only in certain circumstances; 'in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits.'"  *Small*, 136 F.3d at 1336–37 (quoting *Mullane*, 339 U.S. at 317).[9]

_____

[9]  These constitutional minimums are unchanged whether the interest at stake concerns real property or some other form of property interest.  *See, e.g., Jones*, 547 U.S. at 223 (real property); *Tulsa*, 485 U.S. at 485 (creditor's cause of action against decedent's estate); *Mennonite*, 462 U.S. at 798 (mortgagee's security interest); *Small*, 136 F.3d at 1335 (interest in $1,813.10).

In 1950, the *Mullane* Court explained its disapproval of notice by publication when the address of the affected party is known or easily ascertainable: "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." 339 U.S. at 315. The D.C. Circuit in 1998 expanded that "[a]lmost fifty years after *Mullane*, in an increasingly populous and mobile nation, newspaper notices have virtually no chance of alerting an unwary person that he must act now or forever lose his rights; they are no more effective than publishing a notice in the Federal Register." *Small*, 136 F.3d at 1336.

It is thus easy to conclude that DCFS had a constitutionally protected interest in the Vehicle, and was entitled to notice "reasonably certain to inform" it prior to the elimination of that interest. *See Mullane*, 339 U.S. at 315. The Vehicle had a Virginia license plate, and regardless of whether the registration sticker was expired at the time the Vehicle was impounded, the District neither searched the records of the Virginia DMV to determine the existence or identity of any lienholders nor mailed notice of the Vehicle's impoundment and intended auction to DCFSA. DCFSA's identity was readily ascertainable from the Vehicle's Certificate of Title had the District employed "reasonably diligent efforts." *Mennonite*, 462 U.S. at 798 n.4 (noting that mortgage was on file with county recorder, that mortgagee's identity was listed on mortgage, and that even though the address was not provided on the mortgage, the address could have been ascertained by reasonably diligent efforts).[10]

_____

[10] As noted before, the District's failure to send mailed notice or follow the specific publication requirements established in its Code is not determinative in resolving DCFS's due process claim. Even so, the distinctions between the present case and a recent D.C. Circuit case

Had the District been reasonably diligent in searching the Virginia DMV records, as it was required to do by D.C. law, the District would have determined that DCFSA was the titled lienholder. With little effort, notice could have been mailed to DCFSA's address that was plainly listed on the Title. Instead, the District merely published notice in a local D.C. newspaper. On this record, the District's use of a less reliable form of notice was not reasonable. At a constitutional minimum, DCFS was entitled to mailed notice that would have apprised it of the Vehicle's impoundment and intended auction. In failing to give DCFS prior adequate notice, the Court finds the District deprived DCFS of its property in violation of due process of law under the Fifth Amendment.

### III. Post-Deprivation Remedy

The District nonetheless attempts to shift the blame to DCFS for its purported failure

---

finding no due process violation, despite a D.C. law violation, are worth noting. *See Tate*, 627 F.3d at 906. In *Tate*, the DPW had booted and towed Ms. Tate's vehicle for failure to pay parking tickets. *Id*. DPW sent written notice advising Ms. Tate of DPW's intent to auction her vehicle. *Id*. at 907. Due to an internal records error, however, the notice was sent to an incorrect address. *Id*. Ms. Tate nonetheless learned of the impoundment and auction and was granted an administrative hearing to challenge the sale, but the car was nonetheless ultimately auctioned. *Id*. Ms. Tate charged the District with depriving her of her vehicle without due process of law because it sold her car three days earlier than the date she was told it would be sold and because the District auctioned the vehicle short of the requisite 45-day advanced notice of an impending sale per D.C. law. *Id*. at 908.

The D.C. Circuit disagreed: "Tate had meaningful notice of her infractions and a series of hearings to contest them, culminating in the hearing on May 29, 2002, which she requested for the specific purpose of challenging the sale of her vehicle at auction." *Id*. at 908. "If the District subsequently sold it prematurely, that fact may well give rise to a common law tort under D.C. law but it did not deprive her of the only process due—namely, timely notice and a hearing. Tate does not challenge the adequacy of the administrative hearings themselves." *Id*. Accordingly, the Circuit found it was immaterial to the due process claim that the District sold Tate's vehicle prematurely, even if the District violated D.C. law in doing so. DCFS, on the other hand, did not learn of the auction until several months after the Vehicle had already been sold. In further contrast to *Tate*, DCFS did not have an opportunity to challenge the impoundment or sale.

to take advantage of post-deprivation hearing procedures afforded by D.C. law. *See* D.C. CODE § 50-2421.11 (providing that in certain circumstances an "owner or lienholder who fails to reclaim a vehicle within the time prescribed shall nevertheless be entitled to recover the fair market of the vehicle disposed of"). In certain circumstances a state may provide notice and an opportunity to be heard after the initial deprivation of a property interest. "This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997); *see also FDIC v. Mallen*, 486 U.S. 230, 240 (1988) ("An important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.").

In this case, the record does not establish a need for quick or prompt action that might justify this Court's finding that notice and the opportunity for a hearing prior to a *final* deprivation was not required. District law provides that owners have 28 days to reclaim impounded vehicles after an impoundment notice is mailed and 14 days to reclaim a car after notice by publication. *See* D.C. CODE § 50-2421.08. Here, the District impounded the Vehicle on December 22, 2008, published notice of its intent to auction the Vehicle on January 12, 2009, offered the Vehicle up for auction on March 12, 2009, and sold it on March 17, 2009. It can hardly be said that the necessity of a quick sale of the Vehicle justified the District's failure to provide DCFS pre-deprivation notice and hearing. Ultimately, "[t]he availability of post-deprivation remedies is not a defense to the denial of procedural due process where predeprivation process is practicable." *Westborough Mall,*

*Inc. v. Cape Girardeau*, 794 F.2d 330, 337 (8th Cir. 1986).[11]

### C. Section 1983 Claim

The District also moves to dismiss, or in the alternative for summary judgment, on Count II of the Amended Complaint which alleges a violation under 42 U.S.C. § 1983. *See* Am. Compl., Count II. To state a claim for municipal liability under § 1983, a court must conduct a two-step inquiry. "First, the court must determine whether the complaint states a claim for a predicate constitutional violation." *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). "Second, if so, then the court must determine whether the complaint states a claim that a custom or policy of the municipality caused the violation." *Id*. "Each inquiry is separate and serves different purposes." *Id*. Discovery was limited to Count I of the Amended Complaint, *see* Scheduling Order [Dkt. # 12] ¶ 7, because the viability of the § 1983 claim depended upon the viability of the due process violation alleged in Count I.

As the Court has not allowed for discovery on the § 1983 claim, and because many material issues of fact remain unresolved on this claim, it will consider the District's motion as a motion to dismiss. The Amended Complaint alleges that the District deprived DCFS of its property interest in the Vehicle through the District's "official policy or custom of impounding vehicles for

---

[11] Furthermore, in its reply, the District glosses over the requirement that a post-deprivation hearing must be requested within sixty days of the issuance of the infraction. Def's Reply at 8; *see* D.C. CODE § 50-2421.11(2). In this case, DCFS did not learn of the auction until approximately four months after it occurred. *See* Pl.'s Opp'n, Ex I (Ernie Bucks Aff.) ¶¶ 4–6. Even as the District cites the statute text outlining the 60-day requirement, the District contends that there is nothing in the record to suggest that DCFS was precluded from requesting a hearing later. *See* Def's Reply at 8; Def.'s Mem. at 11. The District's argument, however, is not only belied by the statute itself, but the District provides no evidence to suggest that it or DPW would be willing to waive the 60-day requirement had DCFS simply requested them to do so. Even if this were true, however, the District nonetheless failed to provide DCFS with constitutionally-required prior notice of the auction.

which there are not two or more unpaid tickets outstanding for a period of at least 60 days" and for which no other circumstances apply under District law, *see* Am. Compl. ¶ 39, and that the District had an official custom or policy of "not providing notice of impoundment to lienholders of vehicles registered outside the District of Columbia and/or failure to train or supervise DPW employees regarding the notice required" by District law "despite knowledge that the notice requirement was being systematically disregarded so as to violate the constitutional rights of lienholders." *Id.* ¶ 40.

These allegations are sufficient to survive a motion to dismiss. *See Baker*, 326 F.3d at 1306. "The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 220 (D.D.C. 2005) (citations omitted). At this pre-discovery juncture, DCFS has alleged sufficient factual matter; the District's motion to dismiss Count II of the Amended Complaint will be denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Amended Motion to Dismiss and/or Motion for Summary Judgment [Dkt. # 29] will be denied. Defendant's Motion for Summary Judgment as to Count II will be denied without prejudice. Plaintiff's Motion for Summary Judgment as to Count One of the Amended Complaint [Dkt. # 31] will be granted. A memorializing Order accompanies this Memorandum Opinion.

Date: August 17, 2011

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

-21-